UNITED STATES *v.* GIBSON-THOMSEN CO., INC. (No. 4255)[1]

[1] C. A. D. 98

United States Court of Customs and Patent Appeals, February 5, 1940

*Webster J. Oliver*, Assistant Attorney General (*Daniel G. McGrath*, special attorney, of counsel), for the United States.

*James W. Bevans* for appellee.

[Oral argument December 5, 1939, by Mr. McGrath and Mr. Bevans]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, holding certain wood brush blocks and tooth brush handles, imported at the port of New York, to be properly marked so as to indicate the country of their origin within the purview of section 304 of the Tariff Act of 1930, as amended by section 3 of the Customs Administrative Act of 1938.

The statute, so far as pertinent, reads:

SEC. 304. MARKING OF IMPORTED ARTICLES AND CONTAINERS.

(a) *Marking of Articles.*—Except as hereinafter provided, *every article of foreign origin* (or its container, as provided in subsection (b) hereof) *imported into the United States* shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner *as to indicate to an ultimate purchaser in the United States* the English name of the country of origin *of the article.* The Secretary of the Treasury may by regulations—

(1) Determine the character of words and phrases or abbreviations thereof which shall be acceptable as indicating the country of origin and prescribe any reasonable method of marking, whether by printing, stenciling, stamping, branding, labeling, or by any other reasonable method, and a conspicuous place on the article (or container) where the marking shall appear;

(2) Require the addition of any other words or symbols which may be appropriate to prevent deception or mistake as to the origin of the article or as to the origin of any other article with which such imported article is usually *combined* subsequent to importation but before delivery to an ultimate purchaser;

\*      \*      \*      \*      \*      \*      \*

(e) *Penalties.*—If any person shall, with intent to conceal the information given thereby or contained therein, deface, destroy, remove, alter, cover, obscure, or obliterate any mark required under the provisions of this Act, he shall, upon conviction, be fined not more than $5,000 or imprisoned not more than one year, or both. [Italics ours.]

It appears from the record that at the time of their importation the involved articles were legibly, indelibly, and permanently marked in a conspicuous place (so long as they remained in their imported condition) with the name of the country of their origin (Japan), the word "Japan" being die-sunk on that part of the articles where, after importation, bristles were to be inserted in order to convert the toothbrush handles into toothbrushes and the wood brush blocks into hairbrushes.

On the trial below, the toothbrush handles were introduced in evidence as Exhibit No. 1 and the wood brush blocks as Exhibit No. 2.

It appears from the record that the importer (appellee) manufactures toothbrushes and military hairbrushes; that, in the manufacture of toothbrushes, holes are bored into that end of the toothbrush handle designed to become the brush end; that bristles are inserted and embedded therein; that the bristles are then trimmed and the handles "polished and stamped"; that, in the manufacture of hair brushes, holes are bored into the squared, flat side of the wood brush block (the side designed to become the brush side), and bristles are inserted and embedded therein; that the cost of manufacturing *toothbrushes* is proportioned approximately as follows: the toothbrush handles, 30 per centum, the bristles, 40 per centum, the labor in inserting and embedding the bristles, 20 per centum, and the wire used in embedding the bristles and other miscellaneous expenses, 10 per centum; that, in the manufacture of hair brushes, the bristles used are "by far the most valuable element," other costs being proportioned approximately as follows: *wood brush blocks*, 20 per centum, and the labor from about 10 to 20 per centum. It further appears from the record that when the involved toothbrush handles and wood brush blocks are manufactured into toothbrushes and hairbrushes, respectively, the markings thereon indicating the country of their origin will be obliterated by the bristles embedded therein; that the protest in the instant case was directed to the refusal of the collector to deliver the involved articles to the importer until they were marked with the name of the country of their origin in a conspicuous place:

where (as stated by the collector) the marking is not likely to be defaced, destroyed, removed, altered, covered, obscured, or obliterated by the treatment or use made of these articles before they reach the ultimate purchaser.

On the record thus presented, the trial court held that the processes necessary to convert toothbrush handles and wood brush blocks like

those here involved into toothbrushes and hairbrushes, respectively, are manufacturing processes; that, as a result of such manufacturing processes, the imported toothbrush handles and wood brush blocks lose their identity as such, and become new articles having, respectively, a new name, character, and use; that as such new articles are produced in the United States they are products of the United States; that the language "ultimate purchaser in the United States," as used by the Congress in section 304 (a), *supra*, was intended to mean the "ultimate purchaser of the imported article"; that, within the purview of section 304 (a), *supra*, the manufacturer of hairbrushes and toothbrushes is the ultimate purchaser of the involved and like imported articles; and that neither the Congress in enacting that section, nor the Treasury Department in issuing regulations in accordance therewith (article 528, Customs Regulations, 1937, as amended, T. D. 49658, said amendment being article 528 (*h*)), contemplated that articles like those here involved should be so marked as to indicate to the purchaser of the finished hairbrushes and toothbrushes that the wood brush blocks and the toothbrush handles were made in a foreign country. In so holding, the court quoted article 528 (*h*), *supra*, and also quoted from T. D. 49715, wherein the Treasury Department advised the Collectors of Customs and others concerned as to the intended meaning of article 528 (*h*), and stated that should it be held, as urged by counsel for the Government, that it was the congressional intent in the enactment of section 304 (*a*), *supra*, to require that imported material, which is to be used in the United States as material in the manufacture of an article, be so marked with the country of its origin as to indicate to the ultimate purchaser of *the article manufactured in the United States* that such imported material was made in a foreign country, manufacturers in the United States would be compelled, where an article is made of several materials imported from different countries, "to have each of the materials so marked that the name of the country of production thereof would appear on the finished article"; that, in such case, "an article manufactured in the United States would bear the marking legend of" several countries; and that "such confusion of markings could not have been intended" by the Congress.

Article 528 (*h*), *supra*, reads as follows:

When an imported article is of a kind which is usually combined with another article subsequent to importation but before delivery to an ultimate purchaser, the marking to indicate the country of origin shall include words or symbols which will clearly show that the origin indicated is that of the imported article only and not that of any other article with which the imported article may be combined subsequent to importation. For example, bottles or drums imported empty to be filled in the United States shall be marked with some such words as "bottle (or

drum) made in (*name of country*)." This regulation shall not apply to articles of a kind which are ordinarily so substantially changed in this country that the articles themselves become products of the United States.

The pertinent part of T. D. 49715, *supra*, reads:

Article 528 (*h*) in its present form applies only when an imported article is of a kind which is usually *combined* with another article subsequent to importation but before delivery to an ultimate purchaser *in a manner which does not result in an article manufactured or produced in the United States*. The phrase "combined with another article," as used in article 528 (*h*), refers to a combining of an imported article with another article *without any process of manufacture or production and in such a manner that their separate identities are maintained and they do not become integral parts of an article manufactured or produced in the United States. Imported watch movements and toothbrush handles*, for example, are not within the purview of the article, whereas *bottles or other containers* imported empty to be filled are within its purview. [Italics supplied.]

It is contended here by counsel for the Government that, owing to the fact that section 304 (a), *supra*, requires that imported merchandise be marked in such manner "as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article," the involved toothbrush handles and wood brush blocks, although mere materials to be used in the manufacture of toothbrushes and hairbrushes, respectively, should, pursuant to the mandates of the statute, have been marked so as to indicate to the retail purchasers of the toothbrushes and hairbrushes in the United States the name of the country of origin of the toothbrush handles and wood brush blocks. In support of their contention, counsel for the Government rely upon the provisions contained in the first part of section 304 (a), *supra*, and paragraph (2) of that section, and the legislative history of those provisions.

As will be observed, section 304 (a) (2), *supra*, authorizes the Secretary of the Treasury "by regulations" to:

Require the addition of any other words or symbols which may be appropriate to prevent deception or mistake as to the origin of the article *or as to the origin of any other article with which such imported article is usually combined subsequent to importation but before delivery to an ultimate purchaser*. [Italics ours.]

Counsel for the Government argue that the words "ultimate purchaser" were not in section 304 of the Tariff Act of 1930, and that their inclusion in section 304 (a), *supra*, was for the express purpose of requiring that all imported articles, capable of being marked, be marked so as to indicate to the retail purchaser of such articles the country of their origin, and that it was also the purpose of the Congress to require that imported material, which is to be used in the United States in the manufacture of a new article, having a new name, character, and use, be marked so as to indicate to the retail purchaser of

the new article produced in the United States the name of the country of origin of such imported material.

We have carefully examined the legislative history of section 304 (a), *supra*, relied upon by counsel for the Government (such history including Report No. 1429 from the Committee on Ways and Means of the House of Representatives on Bill H. R. 8099 (originally H. R. 6738, which was submitted to the Congress by the Treasury Department), the statement by Mr. Spingarn of the Treasury Department before the Committee on Finance of the United States Senate at the hearings before that committee, and Report No. 1465 on H. R. 8099 from the Committee on Finance of the United States Senate), relative to the meaning intended by the Congress to be ascribed to the language "ultimate purchaser in the United States," contained in that section, and find nothing therein to indicate that the Congress intended other than to require that imported articles, capable of being marked, except such articles as the Treasury Department is authorized to exempt, be marked so as to indicate to the ultimate purchaser of *such imported articles* the country of their origin.

With reference to the quoted language of section 304 (a) (2), *supra*, the Treasury Department, in a written analysis thereof presented to the Committee on Ways and Means of the House of Representatives at the time that committee was considering H. R. 6738, *supra*, stated, at page 131 in a pamphlet entitled "Customs Administrative Bill," that—

\* \* \* paragraph (2) is designed to prevent deception or mistakes as to the origin of imported articles or as to the origin of any other article with which the imported article is usually combined. This latter paragraph is intended to remedy the existing situation with respect to importations such as empty perfume bottles, which are filled with domestic perfume subsequent to importation. In such a case, it is obvious that there is a wide avenue for deception or mistake in so far as an ultimate purchaser is concerned, unless the marking is done in a manner to indicate clearly that the container itself was imported rather than the contents.

It would seem to be clear from the language in paragraph (2) of section 304 (a) that the Congress sought to prevent such confusion and deception in the trade and commerce of the United States as would result if an imported article be so marked with the country of its origin that, when *combined* with a domestic article, an ultimate purchaser would believe that not only the article so marked was a product of the foreign country, but that the domestic article with which it was *combined* was also a product of that country. That the Treasury Department so construed the language in that paragraph is clearly indicated by the hereinbefore quoted excerpt from the Department's analysis of it, by article 528 (*h*) of the customs regula-

tions, promulgated immediately after the enactment of section 304 (a) (2), *supra*, and by the Treasury Department's explanation of the provisions of that article in T. D. 49715. It is likewise evident from the quoted customs regulations and the explanation thereof in T. D. 49715 that the Treasury Department understood that the quoted provisions of section 304 (a) (2), *supra*, were not intended by the Congress to have application to *imported materials used in the manufacture in the United States of a new article having a new name, character, and use.* Furthermore, the Treasury Department expressly stated in T. D. 49715 that toothbrush handles were not articles which were *usually combined* with other articles in the United States and were not covered by article 528 (*h*), *supra*.

We find nothing in the statute nor in its legislative history to warrant a holding that the Congress intended to require that an imported article, which is to be used in the United States as material in the manufacture of a new article having a new name, character, and use, and which, when so used, becomes an integral part of the new article, be so marked as to indicate to the retail purchaser of the new article that such imported article or material was produced in a foreign country. On the contrary, we are of opinion that the Congress intended, by the provisions of section 304 (a) (2), *supra*, to cover only such imported articles as do not lose their identity as such when *combined* with other articles.

It was conceded by counsel for the Government at the time of the oral arguments in this court, and properly so we think, that the involved articles—toothbrush handles and wood brush blocks—are mere materials to be used in the United States in the manufacture of new articles—toothbrushes and hairbrushes, respectively. See *Tide Water Oil Co.* v. *United States*, 171 U. S. 210, 217; *United States* v. *Richter*, 2 Ct. Cust. Appls. 167, T. D. 31680; *United States* v. *Schrenk & Co.*, 7 Ct. Cust. Appls. 451, T. D. 37013.

It is clear from the record that the involved articles are not such as are "usually combined" in the United States with other articles, within the purview of section 304 (a) (2), *supra*, but, on the contrary, are so processed in the United States that each loses its identity in a tariff sense and becomes an integral part of a new article having a new name, character, and use. We are of opinion, therefore, that, at the time of their importation, the involved articles were marked "in such manner as to indicate to" the "ultimate purchaser in the United States"—the manufacturer of toothbrushes and hairbrushes— the country of their origin—Japan.

We are in entire accord both with the reasoning and conclusion reached by the trial court. The judgment is *affirmed*.