BESTFOODS (formerly known as CPC International, Inc.), Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Cross Appellant.

Nos. 98–1069, 98–1218.

United States Court of Appeals, Federal Circuit.

Jan. 25, 1999.

John M. Peterson, Neville, Peterson & Williams, of New York, New York, argued for plaintiff-appellant. With him on the brief were George W. Thompson, and Arthur K. Purcell.

Armando O. Bonilla, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant-cross appellant. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Assistant Director. Of counsel on the brief were David Hamill, Attorney, Office of General Counsel, U.S. Department of Treasury, of Washington, DC; and Sandra Bell, Supervisory Attorney Advisor, Office of Regulations and Rulings, U.S. Customs Service, of Washington, DC.

Before NEWMAN, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Appellant Bestfoods, formerly known as CPC International, Inc., makes Skippy brand peanut butter. Bestfoods makes the peanut butter from peanut slurry—a gritty, peanut-based paste—in its processing plant in Little Rock, Arkansas. Most of the peanut slurry that is used to make peanut butter at the Little Rock plant is made in the United States, but between 10 and 40 percent of the peanut slurry is made in Canada from peanuts grown elsewhere.

In January 1993, Bestfoods sought an administrative ruling from the Customs Service that the federal marking statute, 19 U.S.C. § 1304, did not require it to mark its peanut butter to indicate that it was made in part in Canada. The marking statute provides that an article of foreign origin must "be marked in a conspicuous place . . . in such manner as to indicate to an ultimate purchaser in the United States . . . the country of origin of the article." 19 U.S.C. § 1304(a). The marking statute is not triggered simply because some of the components or ingredients of an article made in the United States are of foreign origin. On the other hand, if the article, as sold in this country, is essentially the same as when it was imported, *i.e.,* if the article has not undergone a "substantial transformation" following its importation, the marking statute requires that the article be marked to

indicate its foreign origin. *See United States v. Gibson–Thomsen Co.*, 27 C.C.P.A. 267, 1940 WL 4085 (1940). The Court of Customs and Patent Appeals in the *Gibson–Thomsen* case held that a product undergoes such a "substantial transformation" if, as a result of manufacturing or processing steps in this country, the imported product loses its identity and is transformed into a new product having "a new name, character and use." 27 C.C.P.A. at 273.

Bestfoods argued before Customs that the peanut slurry it imported from Canada underwent a substantial transformation, within the meaning of the *Gibson–Thomsen* test, when it was made into peanut butter at Bestfoods' Arkansas plant. Peanut slurry, Bestfoods argued, is a different product from peanut butter under the *Gibson–Thomsen* test, because it differs from peanut butter in name, character, and use. Bestfoods therefore claimed that it was the "ultimate purchaser" of the peanut slurry, within the meaning of the marking statute, and should not be required to mark its processed peanut butter in a way that would identify it as a product, in part, of Canada.

Customs rejected Bestfoods' argument and ruled that Bestfoods had to mark its peanut butter to indicate its Canadian content. In so ruling, Customs relied on regulations promulgated pursuant to the North American Free Trade Agreement (NAFTA), Dec. 17, 1992, Can.-Mex.-U.S., 32 I.L.M. 605 (1993). Those regulations, codified at 19 C.F.R. Part 102 and 19 C.F.R. § 134.35(b), employ the so-called "tariff shift" method for determining whether goods have undergone substantial transformation following their importation and therefore do not need to be marked to indicate their foreign origin. That is, the regulations provide that an article imported from a NAFTA country will be considered to have undergone a substantial transformation only if processing or manufacturing steps in this country are sufficient to change the article's tariff classification. Because peanut slurry and peanut butter share the same tariff classification, as defined by the regulations, Customs determined that the peanut slurry did not undergo a substantial transformation when it was converted into peanut butter at the Arkansas plant. Customs therefore concluded that Bestfoods was not the "ultimate purchaser" of the Canadian peanut slurry, within the meaning of the marking statute, and that the finished peanut butter incorporating the imported peanut slurry had to be marked to reflect its Canadian origin.

Bestfoods filed an action in the Court of International Trade challenging Customs' ruling. The company argued that the 1994 NAFTA regulation was invalid to the extent that it departed from the *Gibson–Thomsen* "name, character, and use" test for determining whether a good had undergone a "substantial transformation" after importation.

The Court of International Trade agreed with Bestfoods' challenge to the regulation that defined the ultimate purchaser of a NAFTA good by using the tariff-shift approach. The court held that the regulation improperly abrogated the case-by-case substantial transformation test as set forth in the *Gibson–Thomsen* case. *See CPC Int'l, Inc. v. United States*, 933 F.Supp. 1093 (Ct. Int'l Trade 1996). When the NAFTA implementation legislation was passed, the court reasoned, Congress was aware of the *Gibson–Thomsen* test, which had long been applied to define the term "ultimate purchaser" for purposes of the marking statute. If Congress had meant for the term ultimate purchaser to be defined differently for NAFTA and non-NAFTA goods, the court explained, that intention would have been reflected in the legislation or the legislative history. The court therefore remanded the case to Customs to determine whether, under the traditional *Gibson–Thomsen* test, Bestfoods would be required to mark its peanut butter.

On remand, Customs again ruled that Bestfoods had to mark its peanut butter. Under the *Gibson–Thomsen* test, Customs concluded, the imported peanut slurry was not substantially transformed by being processed into peanut butter, because the essential character of the finished peanut butter was imparted by the peanut slurry, part of which was of Canadian origin.

Bestfoods again sought relief from the Court of International Trade, this time arguing that Customs had misapplied the *Gibson–*

*Thomsen* test. The court, however, rejected Bestfoods' argument. It held that peanut slurry is a form of peanut butter, and that the processing Bestfoods uses to convert peanut slurry into peanut butter did not alter the essential character of the product. The court also rejected Bestfoods' argument that the amount of Canadian peanut slurry that it used in making its peanut butter was not sufficient to trigger the marking requirement. Accordingly, the court upheld Customs' ruling that Bestfoods was required to mark its peanut butter in a manner indicating that it originated in part from Canada. *See CPC Int'l, Inc. v. United States*, 971 F.Supp. 574 (Ct. Int'l Trade 1997).

The government has appealed from the decision of the Court of International Trade holding the NAFTA regulations invalid, and Bestfoods has appealed from the court's decision holding that the Bestfoods is required to mark its peanut butter under the *Gibson–Thomsen* standard. Because we agree with the government that the NAFTA regulations are valid, it is unnecessary to address Bestfoods' appeal.

In response to the government's appeal, Bestfoods argues that Customs' NAFTA regulations, and 19 C.F.R. § 134.35(b) in particular, improperly jettisoned the *Gibson–Thomsen* "name, character, and use" test for applying the federal marking statute in favor of the tariff-shift approach. According to Bestfoods, that change constituted an impermissible regulatory amendment of a longstanding construction of the marking statute. For the reasons set forth below, we hold that the Secretary of the Treasury acted lawfully in promulgating regulations applying the tariff shift methodology to determine whether goods imported from NAFTA countries are subject to the marking requirements of 19 U.S.C § 1304(a).

1

Annex 311 of NAFTA, entitled "Country of Origin Marking," requires the parties to establish "marking rules" to govern when a party to the agreement can require an article imported from another NAFTA country to be marked to indicate the article's country of origin. *See* NAFTA Annex 311, ¶¶ 1, 2. The definitional provisions of Annex 311 make clear that the marking rules must employ the tariff-shift method for determining whether a particular good is a good of the exporting country or whether it has been sufficiently altered after importation to qualify as a good of the importing country. The term "ultimate purchaser" is defined to mean "the last person in the territory of an importing Party that purchases the good in the form in which it was imported," and the phrase "the form in which it was imported" is defined to mean "the condition of the good before it has undergone one of the changes in tariff classification described in the Marking Rules." NAFTA Annex 311, ¶ 11. Annex 311 further requires each NAFTA country to exempt from any country-of-origin marking requirement any good of another NAFTA country that "is to undergo production in the territory of the importing Party by the importer, or on its behalf, in a manner that would result in the good becoming a good of the importing Party under the Marking Rules." NAFTA Annex 311, ¶ 5(b)(viii). The effect of that provision is to exempt an article from marking if it underwent processing in the importing country that resulted in a change in the article's tariff classification.

Congress implemented NAFTA through the NAFTA Implementation Act, Pub.L. 103–122, 107 Stat.2057 (1993). With that Act, Congress approved NAFTA, as well as a "statement of administrative action" that was submitted with the legislation. *See* 19 U.S.C. § 3311(a); *The North American Free Trade Agreement Act Statement of Administrative Action*, H.R. Doc. No. 103–159, vol. 1, at 450 (103d Cong., 1st Sess.1993). The statement of administrative action and the NAFTA Implementation Act authorized the promulgation of such regulations "as necessary or appropriate to implement immediately applicable U.S. obligations under the NAFTA," *id.* at 463, and those "necessary or appropriate to carry out the actions proposed in the statement of administrative action," 19 U.S.C. § 3314(b).

Following the enactment of the NAFTA Implementation Act, the Secretary of the Treasury promulgated regulations containing the marking rules required by NAFTA. *See*

19 C.F.R. Part 102 and 19 C.F.R. § 134.35(b). As a result, the regulations now treat NAFTA and non-NAFTA goods differently for purposes of the marking requirements. Subsection (a) of 19 C.F.R. § 134.35, which deals with goods from non-NAFTA countries, directs the use of the test established in the *Gibson–Thomsen* case to determine whether a good has been substantially transformed following its importation and therefore need not be marked to indicate a foreign country of origin. Subsection (b) of the regulation, which applies to goods from NAFTA countries, applies the tariff-shift method to NAFTA goods. It excepts from the marking requirement those goods that are "to be processed in the United States in a manner that would result in the good becoming a good of the United States under the NAFTA Marking Rules," but otherwise requires that goods be marked to disclose the country of origin of the goods.

2

■ It is undisputed that Annex 311 of NAFTA required the Secretary of the Treasury to adopt marking rules, based on the tariff-shift approach, to determine when goods from NAFTA countries would be *exempt* from domestic marking requirements. Bestfoods argues, however, that the converse is not true. That is, Bestfoods argues that the Secretary was not authorized—by Annex 311, the NAFTA Implementation Act, or otherwise—to adopt the tariff-shift methodology to determine when marking requirements would be *imposed.* According to Bestfoods, the NAFTA marking rules have displaced the traditional *Gibson–Thomsen* test only insofar as there may be some goods that would have to be marked under the *Gibson–Thomsen* test but not under the marking rules.

The effect of adopting Bestfoods' argument would be to require Customs to exempt NAFTA goods from the statutory marking requirement if the goods would be considered goods of the United States under either the *Gibson–Thomsen* test or the NAFTA marking rules. Because 19 C.F.R. § 134.35(b) applies the NAFTA marking rules, and not the *Gibson–Thomsen* test, to determine when NAFTA goods must be marked, Bestfoods contends that the regulation is invalid.

We reject Bestfoods' argument. The effect of the adoption of NAFTA is that the term "article of foreign origin" in the federal marking statute must be construed to exclude NAFTA goods that undergo a tariff shift after importation, regardless of whether they would be considered "articles of foreign origin" under the *Gibson–Thomsen* test. In the case of NAFTA goods, Congress has thus authorized the Secretary of the Treasury to promulgate regulations that define the term "article of foreign origin" for NAFTA goods according to the tariff-shift methodology. Of course, the consequence of altering the definition of "article of foreign origin" is not only to change the scope of the goods that are exempted from marking under the marking statute, but also to change the scope of the goods that are subject to the statutory marking requirements. Thus, the effect of Congress's authorizing the Secretary of the Treasury to promulgate regulations "necessary or appropriate" to make the United States' marking rules comply with the requirements of Annex 311, *see* 19 U.S.C. § 3314(b), was to empower the Secretary to adopt a construction of the federal marking statute, for NAFTA goods, that was based on the tariff-shift approach instead of the *Gibson–Thomsen* approach.

3

■ Although Bestfoods contends otherwise, the NAFTA marking rules and their implementing regulations do not conflict with the marking statute, because the statute does not specify what methodology must be used to determine what is an "article of foreign origin" and who is the "ultimate purchaser" of a particular imported good. In the absence of statutory direction, the Court of Customs and Patent Appeals in *Gibson–Thomsen* adopted a case-by-case approach, looking to the "name, character, and use" of the goods. When the NAFTA marking rules displaced the *Gibson–Thomsen* approach for purposes of NAFTA goods, it was not necessary to amend the marking statute in order to effect that change, because nothing in the

statute required adherence to the case-by-case approach.

Because the new regulations are not inconsistent with 19 U.S.C. § 1304, we reject Bestfoods' argument that the regulations violate the prohibitions of section 102(a) of the NAFTA Implementation Act, 19 U.S.C. § 3312(a). Section 102(a) provides that the Implementation Act shall not be construed to amend or modify existing laws by implication. The Court of International Trade interpreted that provision to mean that NAFTA did not authorize the Secretary to implement regulations altering the approach courts had used in applying the substantial transformation test before NAFTA. That reads too much into section 102(a), which simply ensures that NAFTA will not be construed as having implicitly amended or repealed any federal statute.

### 4

■ We likewise reject Bestfoods' argument that the fact that Congress amended 19 U.S.C. § 1304 in one respect, not pertinent here, indicates that it did not intend to change, or permit the Secretary of the Treasury to change, the operation of the statute in other respects. The NAFTA Implementation Act added a new subsection to 19 U.S.C. § 1304, which is now codified at 19 U.S.C. § 1304(j). That subsection made a variety of changes in the statute as it applies to NAFTA goods. Bestfoods argues that because Congress did not include abrogation of the *Gibson–Thomsen* test among the provisions of subsection (j), it must not have intended to allow that change to be made.

The problem with that argument is that the new subsection contained matters for which the marking statute needed to be amended or supplemented. It did not include matters that were expected to be addressed through regulation, such as the content of the marking rules. Significantly, the new subsection did not include any reference to the exemption from marking that was required by Annex 311 for goods that underwent a tariff shift after importation. That subject was not addressed in the new subsection, presumably because it was regarded as unnecessary to amend the statute in order to put that provision of Annex 311 into effect. The same reasoning applies to the adoption of the tariff-shift methodology to define those goods falling within the marking requirement: Because a statutory amendment was not necessary to effect that change, it is not surprising or significant that the statute was not amended for that purpose.

### 5

Accordingly, we reverse the decision of the Court of International Trade holding the NAFTA marking rules invalid to the extent that they impose marking requirements based on a tariff-shift approach. We remand the case to the Court of International Trade to permit Bestfoods to pursue any other arguments it may have as to why it should not be required to mark its product under the applicable regulations. Because we conclude that the Treasury Department's tariff-shift regulation is valid, we find it unnecessary to consider whether Customs' ruling would be upheld under the pre-NAFTA standards for determining whether a good has undergone a substantial transformation after its importation, as held by the Court of International Trade. We therefore vacate the judgment, which was premised on the court's conclusion that marking would be required under the pre-NAFTA "substantial transformation" test.

Each party shall bear its own costs for this appeal.

*REVERSED IN PART, VACATED IN PART, AND REMANDED.*