Varsity Watch Co. *v.* United States (No. 4558) [1]

[1] C. A. D. 359.

United States Court of Customs and Patent Appeals, March 25, 1947

Lane, Young & Fox (William H. Fox of counsel) for appellant.
Paul P. Rao, Assistant Attorney General (Richard F. Weeks and Sybil Phillips, special attorneys, of counsel), for the United States.

[Oral argument February 12, 1947, by Mr. Fox and Mr. Weeks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

BLAND, Judge, delivered the opinion of the court:

In 1942 appellant imported into the United States from Switzerland certain wrist watch cases of two types, one for use by ladies, the other for use chiefly by gentlemen. The merchandise was assessed for duty at the rate of 40 cents each plus 30 per centum ad valorem under the provisions of paragraph 367 (f) (2) of the Tariff Act of 1930, as modified by the trade agreement with Switzerland, effective February 15, 1936, 69 Treas. Dec. 74, T. D. 48093. The trade agreement modification of paragraph 367 (f) corresponds with the provisions of the said paragraph in all respects except as to the rate of duty, which the said agreement reduces from that imposed by the statute.

The importer protested the classification and assessment of duty under paragraph 367 (f) (2) and claimed that the merchandise was properly classifiable under paragraph 367 (f) (4) of the tariff act, as modified by the said trade agreement. The importer also alternatively claimed that the goods, if not classifiable under either of the said provisions of said paragraph 367 (f), as modified by said agreement, should be held dutiable under the provisions of paragraph 397 of the Tariff Act of 1930 at the rate of 65 per centum if plated with gold, or at the rate of 45 per centum if not so plated. That paragraph provides for "articles or wares not specially provided for, * * * and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, * * * 65 per centum ad valorem; * * * not plated with platinum, gold, or silver, or colored with gold lacquer, * * * 45 per centum ad valorem."

Appellant's protest was overruled by the United States Customs Court, Second Division (C. D. 1015), and from the court's judgment appellant has appealed here.

Paragraph 367 (f), as modified by the Swiss Trade Agreement, supra, follows:

| Tariff Act of 1930 paragraph | Description of articles | Rate of duty |
|---|---|---|
| 367 (f)_____ | All cases, containers, or housings, designed or suitable for the enclosure of any of the movements, mechanisms, devices, or instruments provided for in paragraph 367, whether or not containing such movements, mechanisms, devices, or instruments, and whether finished or unfinished, complete or incomplete, except such containers as are used for shipping purposes only:<br>    (1) If made of gold or platinum_____ | 75¢ each and 30% ad val. |
| |     (2) If in part of gold, silver, or platinum, or wholly of silver_____ | 40¢ each and 30% ad val. |
| |     (3) If set with precious, semi-precious, or imitation precious, or imitation semi-precious stones, or if prepared for the setting of such stones_____ | 40¢ each and 30% ad val. |
| |     (4) If of base metal (and not containing gold, silver, or platinum)__ | 10¢ each and 25% ad val. |

The exhibits introduced before the trial court, for the most part, show that the watch cases in evidence are of very cheap base metal construction to which has been added a slight quantity of gold. They are used to encase wrist watch works, which watches, when completed, sell at a very low price.

There is no dispute but that "the element gold" has been added to the "bezel," or top part, of the involved watch cases by a process of electrolytic deposition. The record fairly shows, and there is not much dispute upon the question, that a small quantity of the metal, gold, formed a very thin gold plating on the bezels of the watch cases when imported, and the record also shows that the quantity is so small (the bezels are very small, particularly those which are designed to contain ladies' wrist watch movements) that it was difficult to obtain a quantitative analysis and that more than one bezel was used in the tests made by the Government chemist who testified for appellant, and that then the quantity obtained was so small that when placed upon a glass it was a mere speck. According to the record, the plating of gold on the top of each case amounted to very much less than one and one-half thousandths of one inch in thickness.

The process by which the gold plating was applied, according to one of appellant's witnesses, is as follows:

\* \* \* the process would consist of having a solution of gold chloride, and that is in a solution of potassium cyanide or sodium cyanide, and sodium carbonate, which is called the electrolyte. The anode in the electrolytic deposition may be Armco iron, or it may be a plate of gold metal. The current passing from the anode to the cathode dissolves gold from the anode and a small amount is deposited on the cathode, or the object to be plated.

In the process, which is one of the well-known plating processes, the amount of gold deposited on the base metal depends upon the length of time the electrolytic process continues and the amount of gold in the solution.

It is freely admitted that the gold is used as a coloring matter to give the bezel the yellow appearance of gold. It is obvious that a

given amount of gold will affect the coloring of the article differently when applied to a base metal of copper than when applied to a base whitish metal.

The record clearly shows that the gold was intentionally and designedly plated upon the articles with a definite purpose of imparting a gold appearance. There are also suggestions in the record to the effect that such a small quantity of gold would enable those who sold the article to point to this fact in order to enhance its salability.

It is rather difficult to briefly state appellant's many contentions. However, we think it sufficient to say that appellant urges here that the instant merchandise does not respond properly to the term, "in part of gold," in paragraph 367 (f) (2), but that it does respond to the provision, "If of base metal (and not containing gold, * * *)," in paragraph 367 (f) (4).

At the trial below, the record shows that appellant disavowed its intention of proving commercial designation of the term, "in part of gold," but stated that it was attempting to show (and here urges that it did show by the instant record) that certain trade practices existed among certain members of the watch case manufacturing industry in dealing with such merchandise, which were to the effect that in referring to a watch case like those at bar the term "gold" was not used, notwithstanding the fact that it must be admitted that the metal, gold, as that term is ordinarily understood, was in fact plated upon the bezel.

Here, in oral argument, appellant does not concede that it has not proven a commercial meaning of the term "gold" which differs from the meaning of the term as that word is ordinarily understood, but at no place in the record do we find pertinent testimony tending to prove that the term, "in part of gold," had a meaning in the trade which was uniform, definite and general throughout the United States at the time of passage of the said tariff act and a meaning which differed from its common meaning and included or excluded the involved articles.

It seems that appellant wishes the court to hold that because certain people in the trade had complied with an agreement among themselves not to refer to merchandise such as that at bar as being plated with gold or as being in part of gold this fact should be accepted as proof of a commercial meaning differing from the common meaning of the term. It appears that by reason of some activities of the Federal Trade Commission—no doubt prompted by misrepresentations where a slight quantity of gold was used—certain standards as to the content of gold were agreed upon by certain sellers and manufacturers of watch cases in the wholesale trade of the United States. This agreement (appellant contends that it was carried out by those who entered into it) is urged as being a guaranty against the alleged unfair methods

with which the Federal Trade Commission concerned itself; but even if the parties concerned with the agreement were sufficient to make the practice uniform and definite and general throughout the United States as among themselves, there is no showing that the whole industry, or others concerned with the handling of the goods, so understood the meaning of the term, "in part of gold." There were no means of enforcement of the agreement, nor did the Federal Trade Commission purport to enforce it, but it was adopted as their recommendation for correcting certain unfair practices in the industry.

It is doubtful as to whether the court below affirmatively passed upon the question as to whether or not appellant had or had not made out a case of commercial designation. It certainly did not pass upon the question as to whether or not the term involved, "in part of gold," had been proven to have a meaning in commerce different from its common one. As we understand the opinion below, it in effect held that the terms "made of" and "in part of" and "containing" are not susceptible of commercial proof. On this question, the trial court said:

The terms "made of," "in part of," and "containing," as they appear in paragraph 367 (f) (1), (2), and (4), respectively, are not words of art which require recourse to scientific, commercial, or expert proof to ascertain their meaning. On the contrary, their meaning is well understood and well defined. They have been the subject of frequent interpretation, and, depending upon the context in which they are employed, their connotation is clear.

In any event, we have examined the record carefully and we think appellant really means to contend that it has made a case of commercial designation by its proof in the record. We think it is clear that such proof affords no basis for a holding here that the terms, "in part of gold" and "of base metal (and not containing gold)," should be given any meaning other than their common ordinary meaning.

Our holdings herein in no sense are to be regarded as expressing any view on the subject as to whether or not the terms, "in part of gold," and "of base metal (and not containing gold)," are susceptible of commercial proof. If they are susceptible of commercial proof, we hold, however, that appellant has not, in the instant record, made out a case of commercial designation so as to bring about the result it seeks.

We agree with the holding of the trial court, which went into the issues quite thoroughly, that the terms "in part of gold" and "of base metal (and not containing gold)" are neither ambiguous nor, as appellant contends, unambiguous words used in an ambiguous way. Under such circumstances it is ordinarily not necessary or proper to consider legislative history with a view of arriving at a conclusion other than that which the plain import of the language used in the statute would bring about. The trial court, having found no ambiguity, found it unnecessary to resort to legislative history. We

might say in passing, however, that we have gone into the question, not particularly with a view of ascertaining the legislative intent in using the simple language here involved, but to ascertain the correctness of the Government's contention (agreed to by the trial court) to the effect that paragraph 367 (f) was clearly intended to include within its scope "all cases of every description designed for the enclosure of watch movements."

The facts are that at one time in the Senate the bill, H. R. 2667, which eventually became the Tariff Act of 1930, in subparagraph 367 (f) (4), contained the following language: "if of base metal *or any other material* (and not containing gold, silver, or platinum), etc." Before passage of the bill in its final form, however, the phrase, "or any other material," was deleted, which fact would indicate that watch cases of materials such as plastics might fall elsewhere in the tariff act. In the report submitted by the Senate Committee on Finance to accompany H. R. 2667 (Report No. 37, September 4, 1929), on page 17, is found the following:

*Subparagraph (f):* The new phraseology insures that cases for any mechanism device, or instrument dutiable under this paragraph shall be assessed hereunder regardless of the condition in which imported and definitely excludes light containers used as shipping containers and which have no use as permanent cases for mechanisms.

*Subparagraph (f) (4):* The scope of this clause is broadened to include cases made of nonmetallic materials.

This statement obviously was made when the deleted matter was in mind. This, however, throws no light upon the question as to whether or not Congress intended, by its employment of the terms "in part of gold" and "of base metal (and not containing gold)" to provide for articles like those at bar in one or the other subparagraphs of paragraph 367 (f). We find nothing in the legislative history of the controverted provisions which is helpful in the least in deciding the issues at bar.

There is some contention here by appellant to the effect that the term "in part of gold," as commercially understood, would only respond to that portion of a watch case which was composed of gold and an alloy intermixed so as to be capable of being estimated in terms of carats. For instance, in appellant's brief is the following:

That testimony conclusively establishes, we submit, that the term gold, as understood in said trade, when used in connection with watch cases, means cases made wholly or in part of gold metal material such as sheets or plates which is never less than 10 Karat fineness, and with respect to watch cases made wholly or in part of material consisting of a combination of base metal and gold metal sheets or plates, such gold metal must also be at least a sheet or plate of gold metal of a thickness not less than 1½ thousandths of 1 inch affixed by mechanical means to the outer surface of a sheet or plate of base metal. The testimony of the trade witnesses also establishes that the term gold as understood in the wholesale watch case trade does not include gold coating or plating by chemical solutions, such as electro-plating.

On this phase of the argument, it seems that emphasis is put upon the fact that the meaning of the term "in part of gold" must be determined not by the amount or carat value of the gold superimposed upon base metal but on the manner in which it is superimposed.

Evidently this was the contention in the court below, because in its decision the court quoted from this court's decision in *United States* v. *Meadows & Co.*, 5 Ct. Cust. Appls. 532, T. D. 35177 (involving an importation of biscuits surfaced with icing), as follows:

> We think too narrow a view was taken of the word "containing." Paragraph 194 covers the article as imported, and whatever was a part of the article as imported is in the tariff sense contained therein. It is a part of the article. The word "contain" means to include or embrace. * * *

and stated:

> Applying the doctrine of that case to the facts here established, we are of the opinion that the watchcases in controversy do contain gold, and we so hold.

We think on this phase of the case the trial court arrived at the proper conclusion, and we are in full agreement with its reasoning and holding.

One of the chief issues in the case, and one that requires considerable discussion here, is appellant's contention that in view of the insignificant quantity of gold involved, under the rule, *de minimis non curat lex,* the customs officials should treat the instant merchandise, for classification purposes, as if it contained no gold at all.

It is true that the quantity of gold, which is less than one and one-half thousandths of an inch on the bezels of the instant watch cases, is admittedly so small that its actual quantity was difficult of ascertainment and that it was in such a small quantity that the color it lent to the articles was in no sense permanent and would last only a few months, after which the articles would tarnish (as now appears from the exhibits at bar).

A number of cases involving the *de minimis* rule have been brought to our attention. In many instances, in tariff classification cases, quantities of material far greater than those involved here have been ignored under this rule, on the theory that the law will not concern itself with trifles.

In *United States* v. *Aetna Explosives Co.*, 256 U. S. 402, which affirmed the holding of the United States Court of Customs Appeals in *Aetna Explosives Co.* v. *United States,* 9 Ct. Cust. Appls. 298, T. D. 38238, 20 per centum of sulphuric acid was added to a shipment of nitric acid for the purpose of transportation and in order to protect the containers. No new substance was intended. No commercial mixture was created. The presence of the sulphuric acid, therefore, although in a substantial quantity, for tariff duty purposes, was ignored.

In *United States* v. *Thomas & Co.*, 15 Ct. Cust. Appls. 295, T. D.

42473, we cited the *Aetna Explosives Co.* case in holding that the rule laid down there did not apply to the facts then at bar where there was a deliberate mixture of a substantial quantity (5 per centum) of soya-bean oil with linseed oil. Chiefly for the reason that the mixture would not serve as a good delivery for linseed oil, we held that it was a mixture of oil rather than linseed oil and that the 5 per centum soya-bean oil could not be ignored.

Appellant, on this phase of the appeal, relies upon this court's decision in *B. Westergaard & Co.* v. *United States*, 19 C. C. P. A. (Customs) 299, T. D. 45469, which involved fish balls, etc., imported in cans, in some of which was potato flour to the extent of 6 per centum. There this court held that, in view of the small percentage of potato flour present and its function, its quantity was insufficient to give the involved cakes and balls the character of vegetables with fish or of vegetables with meat within the purview of paragraph 773 of the Tariff Act of 1922. The only purpose of the potato flour was the mechanical purpose of holding the ingredients together in the form of balls and cakes during the cooking and sterilizing process. A reading of that opinion is convincing that the facts there are easily distinguishable from the facts at bar.

In *Corporacion Argentina de Productores de Carnes* v. *United States*, 32 C. C. P. A. (Customs) 175, C. A. D. 304, this court had under consideration the question as to whether or not 5.8 per centum cereal contained in a dog food was a substantial quantity sufficient to affect the tariff classification of the product. We held that the 5.8 per centum meal in the dog food could not be ignored under the *de minimis* rule and said:

Not only is it true in the instant case that the quantity of cereal is 5.8 per centum and that, under the proof, it serves a definite, useful purpose in dog food, but no suggestion is offered by this record that the meal in appellant's goods was added by "disguise or artifice to prevent the proper classification of" the merchandise. *United States* v. *International Forwarding Co.*, 15 Ct. Cust. Appls. 198, 201, T. D. 42235. Appellant, according to the record, not only sought to add a desirable, and what seems to be a necessary, ingredient of dog food but also was careful to try to add that quantity which was regarded as substantial by the customs officials. Certainly an importer, in the absence of subterfuge or deceit, has the right to so fashion his merchandise that he may obtain a lower rate of duty than if not so fashioned. *Merritt* v. *Welsh*, 104 U. S. 694, 701, 704.

In the *Corporacion Argentina* case, the application of the *de minimis* rule was exhaustively discussed and many different cases bearing upon the question were given consideration. We there pointed out the difference between the issues in the *Westergaard* case, *supra*, and the issues in the case we were then considering. In the former, the vegetable substance served no useful purpose in the finished product, while in the latter the cereal did serve a useful purpose.

From all the cases involving the application of the *de minimis* rule it appears to be the weight of authority that certain amounts of an

ingredient, although substantial, may be ignored for classification purposes, depending upon many different circumstances, including the purpose which Congress sought to bring about by the language used and whether or not the amount used has really changed or affected the nature of the article and, of course, its salability.

In the instant case, it is admitted that the gold is contained in the plating of the article and was put there for the purpose of adding to its attractiveness in the way of color and no doubt it was added for the purpose of increasing its salability. Under such circumstances, the characteristics of the article were changed from those which it would possess if no gold whatever were used. We know of no case which supports the contention of appellant that under the *de minimis* rule the small quantity of gold here should be disregarded.

If it happened that gold got into the article by accident, if it did not enhance its value and had no purpose in commerce, if it were an unintentional adulterant or the result of an unforeseen and undesired chemical reaction, of course the situation, depending upon all the facts, might be different.

It is our view that Congress intended, in the two controverted provisions, to embrace therein all *metallic* watch cases and to put the higher rate of duty upon those cases which were in part of gold, no matter how small, if it served such a purpose as is disclosed by the instant record, and that in the provision, "If of base metal (and not containing gold * * *)," it meant exactly what it said, that the case had to be a base metal case, and that *it must not contain any gold*.

If the parenthetical phrase, "(and not containing gold * * *)," had been omitted, appellant's argument, that in determining whether the articles at bar were base metal watch cases we should ignore the small quantity of gold, would be much more plausible. We cannot ignore the plain mandate of the statute and hold that subparagraph 367 (f) (4) was intended to cover such merchandise as that at bar, and we are of the opinion that this subparagraph was the counterpart of subparagraph 367 (f) (2), that is to say, if a watch case did contain gold so as to be removed from subparagraph 367 (f) (4) it would necessarily fall within the term "in part of gold" in subparagraph 367 (f) (2).

The case of *Tuska, Son & Co.* v. *United States*, 5 Ct. Cust. Appls. 506, T. D. 35153, was heavily relied upon by the trial court and is relied upon by the Government in its brief here. That case involved trays, boxes, picture frames, and other articles composed of antimony covered with a thin film of coating of gold or silver. They were classified as gold- or silver-plated and were claimed to be dutiable as unplated articles. It is not denied by appellant herein that the instant merchandise has been coated with a small quantity of gold by a plating process; unquestionably the articles are plated. In fact, appellant's

alternate claim is that the goods are dutiable under the provisions of paragraph 397, either at 65 per centum ad valorem "if plated with gold" or at the rate of 45 per centum ad valorem "if not so plated."

While the *Tuska* case, *supra*, has some bearing upon certain of the arguments presented by counsel for appellant, it is not particularly pertinent in view of the fact that in that case the question was whether the term "plated with gold or silver" applied where a thin coating of gold or silver on the basic metal of the imported article was cheaply produced by a chemical deposition alone, whereas in the instant case it is conceded that the imported articles have been coated with a small amount of gold by one of the well-recognized proper methods of coating or plating with precious metal.

From the foregoing it follows that the assessment of the collector and the holding of the trial court were proper.

The judgment of the trial court overruling the protest is *affirmed*.