**SLIP OP. 00-73**

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: JAMES L. WATSON, SENIOR JUDGE**

| | | |
|---|---|---|
| **BESTFOODS (formerly known as CPC INTERNATIONAL, INC.),** | ) | |
| **Plaintiff,** | ) | **Court No. 95-02-00144** |
| **v.** | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

[This case was remanded from the United States Court of Appeals for the Federal Circuit to permit plaintiff to "pursue any other arguments it may have as to why it should not be required to mark its product under the applicable [marking] regulations." Plaintiff's new argument on remand is that the exclusion of its finished peanut butter (and most other agricultural products) from the <u>de</u> <u>minimis</u> exception to the tariff shift rules under 19 C.F.R. § 102.13(b) is unlawful, arbitrary, capricious, and an abuse of discretion. The argument is sustained.]

<u>Neville, Peterson & Williams</u> (<u>John M. Peterson</u>, <u>George W. Thompson</u>, and <u>Curtis W. Knauss</u>, Esqs.) for plaintiff.

<u>David W. Ogden</u>, Acting Assistant Attorney General; <u>David M. Cohen</u>, Director, and <u>Jeanne E. Davidson</u>, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>Armando O. Bonilla</u>, Attorney); Of Counsel: <u>David R. Hamill</u>, Attorney, Department of the Treasury, Office of General Counsel; <u>Sandra L. Bell</u>, Supervisory Attorney Advisor and <u>Monika R. Brenner</u>, Attorney Advisor, United States Customs Service, Office of Regulations and Rulings, for defendant.

Decided: June 28, 2000

**OPINION**

**WATSON, SENIOR JUDGE:**

**INTRODUCTION**

This action is before the court on remand from the United States Court of Appeals for the

Federal Circuit in Bestfoods (formerly known as CPC International, Inc.)  v. United States, 165 F. 3d

1371 (Fed. Cir.), cert. denied, 120 S. Ct. 42 (1999). Familiarity with the prior proceedings in this case

is presumed.

Briefly, in Bestfoods, the appellate court ruled,  inter alia, that the North American Free Trade

Agreement ("NAFTA") "tariff shift" rules, 19 C.F.R. § 102.20, and Customs Regulation 19 C.F.R. §

134.35(a) and (b), are valid, and remanded the case to this court  "to permit Bestfoods to pursue any

other arguments it may have as to why it should not be required to mark its product ['Skippy' brand

peanut butter] under the applicable regulations." 165 F. 3d at 1376.

There is no dispute in the current  proceedings that Canadian peanut slurry does not undergo a

change in tariff classification ("tariff shift") under the specific Marking Rule under Part 102 of the

Customs Regulations (see section 102.20) applicable to peanut butter. Bestfoods, however, contends

that to the extent it will be able to demonstrate that Canadian peanut slurry used in making peanut butter

at its U.S. facilities is present in de minimis amounts, as defined under 19 C.F.R. § 102.13(a), it should

not be required to mark its finished product as a product of Canada (or other equivalent country of

origin  marking designation) pursuant to the NATA Marking Rules and the Marking Statute, 19 U.S.C.

§ 1304(a).

Specifically, Bestfoods contests the validity of 19 C.F.R. § 102.13(b), which excludes most

agricultural products, including peanut slurry,  from the de minimis exception to the tariff shift rules, as

arbitrary, capricious, an abuse of discretion, and otherwise contrary to law. As discussed infra,

Customs seeks to justify the reasonableness of the exclusion of most agricultural products from de

minimis treatment under section 102.13(b) on the basis of health and food safety concerns.

The Customs regulation in issue,  Section 102.13 (19 C.F.R. § 102.13), so far as relevant,

provides as follows:

> (a) Except as otherwise provided in paragraphs (b) and (c) of this
> section, foreign materials that do not undergo the applicable change in
> tariff classification set out in Sec. 102.20 or satisfy the other applicable
> requirements of that section when incorporated into a good shall be
> disregarded in determining country of origin of the good if the value of
> those materials is no more than 7 percent of the value of the good or 10
> percent of the value of the good of Chapter 22, Harmonized System.
>
> (b) Paragraph (a) of this section does not apply to a foreign material
> incorporated in a good provided for in Chapter 1, 2, 3, 4, 7, 8, 11, 12,
> 15, 17, or 20 of the Harmonized System.

## PARTIES' CONTENTIONS

Bestfoods has no quarrel with the application of the de minimis exception to the tariff shift rules

under section 102.13(a), and argues that to the extent that it can demonstrate that its finished peanut

butter qualifies for such de minimis treatment,  plaintiff  should not be required to mark its finished

peanut butter as a product of Canada.[1]  Plaintiff further contends that Customs' exclusion from de

---

[1]Bestfoods notes that the administrative record in this case (in connection with the contested preimportation ruling) represented to Customs that by volume, the amount of Canadian peanut slurry that plaintiff intends to use in making its finished peanut butter will be as little as 10 percent of the total volume of peanut slurry in the finished product. Further, Bestfoods represented that all costs of value-

minimis treatment of certain Chapters of the Harmonized Tariff Schedule covering mostly agricultural

products,  pursuant to section 102.13(b), should be declared by the court to be null and void as

arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law  within the

purview of the Administrative Procedure Act, 5 U.S.C. §§ 553, 706(2).

Defendant contends, first, that the Federal Circuit remanded this case for the limited purpose of

affording  Bestfoods an opportunity to challenge only the application of the Marking Rules, but not to

challenge the validity of any Rule. Hence, defendant argues, plaintiff's challenge to the validity of section

102.13(b) is outside the scope of the Federal Circuit's remand order. Second, defendant contends that

in any case, the NAFTA Marking Rules were correctly applied by Customs in its  Headquarters Ruling

and that section 102.13(b) is within Customs' discretionary authority.

### ISSUES PRESENTED

Whether Bestfoods' challenge to the validity of section 102.13(b) of the Customs

Regulations  is within the scope of the Federal Circuit's  remand order; and if so, whether the exclusion

of peanut butter and most other agricultural products  from the de minimis exception to the tariff shift

rules under 19 C.F.R. § 102.13(b) was arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law, as claimed by Bestfoods.

After careful review of the post-remand submissions of the parties, and for the reasons set forth

hereinafter, the court sustains Bestfoods' arguments.

---

added processing of the peanut butter are incurred in the United States. Thus, plaintiff now represents
that "even though a particular lot of finished peanut butter may contain more than 7 percent of Canadian
material by volume, the Canadian material will often account for less than 7 percent of the value of the
[finished] peanut butter." Pltf's Mem. at 3, n. 4 (emphasis in original).

## DISCUSSION

### 1.

### Defendant's Contention that Plaintiff's Arguments Exceed the Scope of the Remand

In Bestfoods, the Federal Circuit rejected plaintiff's challenges to the validity of the NAFTA Marking Rules' tariff-shift methodology, reversed in part, vacated in part, and remanded the case broadly permitting Bestfoods to pursue "any other arguments it may have as to why it should not be required to mark its product under the applicable regulations." 165 F. 3d at 1376. Plaintiff now seeks to challenge the validity of the exclusion of most agricultural products from the de minimis exception to the tariff shift rules pursuant to section 102.13(b) on the grounds that the reasons advanced by Customs (set forth infra) are arbitrary, capricious, an abuse of discretion, and otherwise contrary to law. Defendant, however, contends that Bestfoods' new challenge to the validity of a regulation is outside the scope of the permissible issues plaintiff may raise on remand.

Contrary to defendant's narrow reading of the remand order of the Federal Circuit, the court broadly permitted Bestfoods to pursue any other arguments in may have as to why it should not be required to mark its product under the applicable regulations, which remand order plainly does not preclude further arguments challenging the validity of a particular NAFTA Marking Rule. The specific issue now raised by plaintiff as to the validity of the exclusion of agricultural products under section 102.13(b) was not before the appellate court prior to remand.

**2.**

**The Challenged Exclusions Under Section 102.13(b)**

Section 102.13 of the Customs Regulations is a so-called "de minimis" rule. The principle of de minimis non curat lex, often shortened to de minimis, is long established in law generally, including customs and international trade law, and is a bedrock principle of statutory construction. See  Alcan Aluminum, Inc. v. United States, 165 F.3d 898 (Fed. Cir. 1999) ("Alcan") and cases cited. See also Varsity Watch Co. v. United States, 34 CCPA 155, C.A.D. 359 (1947); Overton & Co. v. United States, 5 Ct. Cust. Appls. 183 (1914); John S. Connor, Inc. v. United States, 54 Cust. Ct. 213, C.D. 2536 (1965);  Canada Dry Ginger Ale, Inc. v. United States, 43 Cust. Ct. 1, C.D. 2094 (1959); and R.W. Gresham v. United States, 3 Cust. Ct. 308, C.D. 263 (1939). The principle simply means that the law does not concern itself with trifles, see also Black's Law Dictionary, Seventh Ed. 1999, page 443, and has been applied in a variety of statutory contexts. There is no dispute that the de minimis principle may also be applied under the Marking Statute and NAFTA tariff shift rules, and the issue before the court arises only from Customs' withholding of the de minimis principle from the tariff shift rules with respect to most agricultural products.

In response to commenters that expressed concern that  the de minimis rule set forth in section 102.13 was made inapplicable to certain agricultural products, Customs explained, inter alia,  that due to the nature of the products and because of health and food safety concerns, Customs exercised its discretion not to allow a de minimis standard to apply to country of origin determinations of most agricultural products.  Continuing, Customs posited that the exclusion of most agricultural products from de minimis treatment for purposes of country of origin determinations was consistent with Customs'

"past practice with regard to country of origin determinations of agricultural products." See 61 Fed. Reg. at 28,937.

Customs' articulated rationale is somewhat scanty, and the agency did not state that prior to section 102.13(b) there had been a past practice of withholding de minimis treatment from tariff shift rules, or explain how the exclusion of the de minimis exception from the tariff shift rules with respect to agricultural products furthers the purpose of the Marking Statute or NAFTA Marking Rules, or indeed, even explain how the requirement of a stringent application of the tariff shift rules for NAFTA agricultural products addresses Customs' health and food safety concerns.

Defendant's post-remand submissions do not satisfactorily respond to the critical issues raised by Bestfoods going the reasonableness of a regulation, but defendant merely insists that Customs exercised its discretion and followed past practice. The court is not persuaded from defendant's submissions that Customs had the authority or discretion alleged to jettison the de minimis exception to the tariff shift rules with respect to agricultural goods for reasons of health and food safety; or that the foregoing action was consistent with past practice; or that the withholding of de minimis treatment furthers the purpose of the Marking Statute and Marking Rules; or even that excluding the de minimis exception from the tariff shift rules with respect to most agricultural products reasonably addresses Customs' health and food safety concerns.

There is nothing in NAFTA Annex 311, the NAFTA Implementation Act, or the Marking Statute itself, to suggest that Customs has any discretion to address health and food safety concerns with respect to most agricultural products under the Marking Rules, and certainly not by withholding de

minimis treatment from  the tariff shift rules for determining country of origin.[2]  The Congressional intent

and purpose of country of origin marking under section 304(a) of the Tariff Act of 1930, as amended,

is straightforward and largely self-evident from the plain language of the statute, which requires that

articles of foreign origin imported into the United States, or their containers, be permanently marked so

as to indicate to an ultimate purchaser in the United States the English name of the article's country of

origin.  While the identity of the "ultimate purchaser" of a good may be a matter of dispute,  there can

be no dispute that the purpose of the statute is limited to informing an "ultimate purchaser" of an article

in the United States of the foreign articles' country of origin lest that knowledge influence his or her

decision to purchase the article. See United States v. Friedlaender & Co., 27 CCPA 297, C.A.D. 104

(1940); Koru North America v. United States, 701 F. Supp. 229 (CIT 1988); and Globemaster, Inc.

v. United States, 68 Cust. Ct. 77 (1972).  While the Marking Statute requires that the ultimate

consumer be informed by the required marking of a good's country of origin, the statute  does not, and

cannot, address the myriad of  reasons or motivations for consumer's country of origin preferences,

biases, or prejudices as to particular goods, or the goods generally of a particular country. Moreover, it

appears that the health and food safety concerns related to agricultural products that Customs sought to

address in excluding  de minimis treatment from the tariff shift rules were concerns of Customs and not

---

[2]  Plaintiff further objects that denial of de minimis treatment to the application of the tariff shift rules leads to potential results for its finished peanut butter that are absurd and anomalous. For example, plaintiff posits that exclusion of  de minimis treatment from the tariff shift rules under section 102.13(b) will result in requiring that plaintiff's finished peanut butter that may contain Canadian peanut slurry comprising only .000001 percent of the value of the finished peanut butter be marked as a product of Canada.

those of the <u>ultimate purchasers</u> in the United States.

Contrary to defendant's assertion, the withholding of <u>de minimis</u> treatment from  the NAFTA

tariff shift methodology with respect to most agricultural goods grounded on health and food safety

concerns does not further the clear, but limited, purpose of either the Marking Statute or the NAFTA

Marking Rules. Other statutory provisions and regulations administered by Customs jointly with the

Department of Health and Human Services, Food and Drug Administration, and the Department of

Agriculture specifically address and regulate health and safety of food and agricultural products, and

health and food safety  concerns do not fall within the purview of regulation by Customs under the

rubric of the Marking Statute or an exclusion of <u>de minimis</u> treatment from the NAFTA tariff shift rules

with respect to most agricultural products.[3]

Congress implemented NAFTA through the North American Free Trade Agreement

Implementation Act, Pub. L. 103-122, 107 Stat. 2057 (1993) ("NAFTA Implementation Act"). That

Act, and its accompanying <u>Statement of Administrative Action</u>, H.R. Doc. No. 103-159, vol. 1, 103d

Cong., 1st Sess. 1993) ("SAA"), authorize the promulgation of such regulations "as necessary or

---

[3]It would appear to this court that Customs and the agencies having direct responsibility for health and food safety regarding imported agricultural products (Dept. of Agriculture and Food and Drug Administration) could effectively address any  health and food safety concerns with respect to NAFTA agricultural imports without Customs' exclusion of <u>de minimis</u> treatment from the tariff shift rules under section 102.13(b). Essentially, that exclusion results only in the stringent application of the tariff shift rules to agricultural products for purposes of country of origin marking, and does not address health and food safety concerns. Simply requiring Bestfoods to mark finished peanut butter containing <u>de minimis</u> Canadian peanut slurry as a product of Canada would not effectively address Customs' (or its cooperating agency's) health and food safety concerns, and clearly will not inform an ultimate consumer of the finished product concerning any health or food safety problems related to any <u>de minimis</u> Canadian peanut slurry content of  the finished product.

appropriate <u>to implement immediately applicable U.S. obligations under the NAFTA,</u>" and those

"<u>necessary or appropriate to carry out the actions proposed in the statement of administrative action.</u>"

19 U.S.C. § 3314(b) (emphasis added).  The foregoing "obligations" and "actions proposed" did not

address health or food safety concerns related to agricultural products. Moreover, even if the NAFTA

Implementation Act or SAA had anything to suggest that the NAFTA Marking Rules should address

health and food safety concerns with respect to NAFTA agricultural products, it would seem most

unreasonable for Customs to seek to address such concerns by withholding <u>de</u> <u>minimis</u> treatment under

the NAFTA tariff shift methodology for determining country of origin.

NAFTA Annex 311 entitled "Country of Origin Marking," specifically authorized the Parties

to "establish by January 1, 1994, rules <u>for determining whether a good is a good of a Party</u> ('Marking

Rules') for purposes of this Annex, Annex 300-B and Annex 302.2, and <u>for such other purposes as the</u>

<u>Parties may agree.</u>" <u>See</u> NAFTA Annex 311, ¶¶ 1, 2 (emphasis added). Following the enactment of

the NAFTA Implementation Act, Customs promulgated regulations containing the NAFTA Marking

Rules, which rules are codified at 19 C.F.R. Part 102 and 19 C.F.R. § 134.35(b). Those regulations

correctly employ the "tariff shift" methodology for determining whether goods have undergone

"substantial transformation" following their importation, and therefore, do not need to be marked to

indicate their foreign origin.[4] <u>See</u> <u>Bestfoods</u>, 165 F. 3d at 1372.

---

[4]An article imported from a NAFTA country will be considered to have undergone a "tariff shift" only if the processing or manufacturing steps in the United States are sufficient to change the article's  tariff classification. <u>See</u> <u>Bestfoods</u>, 165 F. 3d at 172.  Thus, in determining whether a foreign article has undergone the requisite tariff shift under section 102.20, Customs first determines the tariff classifications for both the foreign material and the finished article. <u>See</u> 59 Fed. Reg. 110, 112 (1994). In this case, the relevant rule in section 102.20 states: "A change to subheading 2008.11 from any other

Section 102.13 of the NAFTA Marking Rules augments the tariff shift rules under section 102.20 by a de minimis exception. The salutary purpose of the de minimis rule was addressed supra. Nonetheless, under section 102.13(b) Customs excluded from the de minimis exception to the tariff shift rules certain Chapters of the Harmonized Tariff Schedule, including  Chapter 20, into which plaintiff's peanut slurry and peanut butter fall. There is no dispute that the excluded Chapters under section 102.13(b) cover mostly agricultural products, including peanut slurry.

Citing T.D. 91-7 concerning "Tariff Treatment and Country of Origin Marking of Sets, Mixtures and Composite Goods," and T.D. 89-66 concerning "Country of Origin Marking of Imported Fruit Juice Concentrate," defendant posits that in promulgating the NAFTA Marking Rules, specifically section 102.13,  Customs formally codified Customs' past practice, which allegedly did not provide for de minimis treatment of most agricultural products for the reasons Customs explained in 61 Fed. Reg. at 28,937 (viz., health and food safety). Deft's Mem. at 8.  Defendant insists that Customs' exclusion of de minimis treatment with respect to most agricultural goods for reasons of health and food safety constitutes a reasonable exercise of the agency's  discretion.

Plaintiff, however, maintains that "the unique and bizarre de minimis provisions of the NAFTA Marking Rules [with respect to agricultural products] are not the continuation of any longstanding

---

chapter, provided that change is not the result of mere blanching of peanuts." See 19 C.F.R. § 102.20(d). Bestfoods does not argue that it should not be required to mark its product because a tariff shift occurred under section 102.20. Since it is undisputed that both peanut slurry and finished peanut butter are classified in subheading 2008.11, the specified tariff shift did not occur when the peanut slurry was processed into peanut butter. Customs, therefore, concluded that Bestfoods was not the "ultimate purchaser" of the Canadian peanut slurry, within the meaning of the Marking Statute, and that therefore, Bestfoods' finished peanut butter incorporating the imported peanut slurry had to be marked to reflect its Canadian origin. Bestfoods, 165 F. 3d at 172.

administrative practice.  Indeed they appear to be contrary to past Customs' practice." Thus, plaintiff

points up Customs Headquarters Ruling 735085 of June 4, 1993, which states: "To the extent such

foreign [vegetable] materials are insignificant, or would have no influence on the purchasing decision,

Customs applies a 'common sense' approach to require marking only of those articles which are more

than de minimis significance."]. Pltf's Mem. at 9-10.

Without discussing the specific issues addressed in T.D. 91-7 and 89-66, it suffices to state that

the rulings relied on by defendant do not demonstrate the alleged  past practice of excluding most

agricultural products from de minimis treatment for reasons of health or food safety. However,

irrespective of Customs' past practice, nothing has been called to the court's attention that remotely

suggests that Customs' exclusion of  de minimis treatment under the tariff shift Marking Rules with

respect to agricultural products for reasons of health or food safety were in response to any authority or

discretion granted in NAFTA Annex 311, the NAFTA Implementation Act, or that the exclusion of de

minimis treatment from the tariff shift rules for reasons of health and food safety under section 102.13(b)

in any way furthers the purpose of the Marking Statute or Marking Rules.

Demonstrating that Customs' denial of de minimis treatment at odds with the purposes of the

statute being implemented is unreasonable and unlawful, plaintiff calls attention to the rationale of the

Federal Circuit in Alcan Aluminum Corp. v United States, 165 F.3d 898 (Fed. Cir. 1999). There, the

Federal Circuit addressed Customs' absolute refusal to apply "the well-recognized doctrine of  de

minimis non curat lex" to the tariff shift requirements in the context of determining whether Alcan's

unwrought aluminum ingots originated in Canada for purposes of  preferential trade treatment (a

reduced merchandise processing fee) under the United States-Canada Free-Trade Agreement

Implementation Act of 1988.  Alcan asserted that the imported aluminum ingots, comprised of both

Canadian and non-Canadian materials, underwent the requisite transformation, thus constituting the

goods as "originating" in Canada, and subject to a preferential merchandise processing fee.  Customs,

however, disagreed and imposed the full (nonpreferential) merchandise processing fee because a

"trivially small" amount  -- comprising less than 1 percent by weight and value - - of grain refiner used in

the production of the ingots did not undergo a tariff classification shift, as required by the HTSUS.

Alcan argued that the tariff shift methodology must be applied  in light of the  de minimis

principle. In other words, because only a small amount of the imported goods did not perform the

required tariff shift, Alcan asked that the court hold that under the de minimis rule, the goods met the

tariff shift requirements. Defendant insisted that the de minimis principle was irrelevant.

Citing Wisconsin Department of Revenue v. William Wrigley, Jr., Co., 505 U.S. 214, 231

(1992) ("de minimis . . . is part of the established background of legal principles against which all

enactments are adopted, and . . . which all enactments are deemed to accept"), the Federal Circuit in

Alcan stressed that the courts have recognized the principle in a wide variety of statutory contexts, and

that the great weight of authority compelled recognition of the principle under the tariff shift rules before

the Alcan court.  The Federal Circuit, citing the ruling of the Supreme Court in  Wisconsin Department

of Revenue establishing that the de minimis principle applies absent indication in the statute to the

contrary, see 505 U.S. at 231-32, observed that "we discern no reason why, in the absence of explicit

language [in the statute] precluding application, the normal operation of the de minimis principle should

be abandoned." 165 F. 3d at 905.

Moreover, stressing the purpose of the governing statute in Alcan ( preserve preferential trading

treatment for Canadian goods), the resulting harsh consequences of  imposing a de facto trade barrier,
and the odd or absurd results of Customs' absolute refusal to apply the de minimis rule,  the Federal
Circuit held that Customs' refusal was "unreasonable and contrary to law." Id. at 903-04.
Interestingly, even the dissenting opinion by Chief Judge Mayer agreed with the majority view
recognizing the importance of the statute's purpose when applying the de minimis principle, citing
Wisconsin Dept. of Revenue, supra. Alcan, 165 F.3d at 906.

There can be no doubt that absent an explicit expression of  legislative intent to the contrary,  as
a matter of fundamental fairness and reasonable statutory interpretation, there is an implied recognition
of the de minimis principle under the governing statute; indeed, absent explicit expression of legislative
intent to the contrary, a very heavy burden falls on a party which insists that the purpose of the
underlying statute compels abandonment of the de minimis  rule.

Defendant seeks to distinguish Alcan on the basis that the appellate court  construed a different
governing statute, which leaves open the "possibility"  that the rule may not need to be applied  in the
current case. Deft's Mem. at 11.  While in Alcan the Federal Circuit applied the de minimis principle in
the context of a statute creating a trade preference, the decision emphasizes that the rule has a very
broad and fundamental application in a variety of contexts, that it is the normal rule for statutory
interpretation, and that in any event, the rule may not lawfully be cast aside by Customs when to do so
thwarts the purpose of the underlying statute.

While Alcan involved Customs' refusal to apply the de minimis rule in the context of
preferential treatment of Canadian goods, the rationale in applying  de minimis in Alcan is equally
compelling here in the context of effectuating the purpose of the Marking Statute and Marking Rules.

As indicated above, the purpose of the Marking Statute and Marking Rules is fulfilled by informing the ultimate consumer of a good of the country of origin;  any health or food safety concerns of Customs related to agricultural products, while they may be relevant to other statutes and regulations administered by Customs cooperatively with other agencies,[5]  fall outside the purpose of country of origin marking under the Marking Statute and NAFTA Marking Rules. Accordingly, the court agrees with Bestfoods  that Customs' health and food safety concerns related to agricultural products could not lawfully or reasonably  be addressed by withholding application of the de minimis principle from the tariff shift methodology.

Defendant further posits that the exclusion of agricultural products from the de minimis exception to the tariff shift rules under section 102.13(b), is "essentially commensurate" with NAFTA

---

[5] Defendant recognizes the cooperative enforcement of federal law by Customs may also involve certain concerns for which the Federal Trade Commission bears responsibility.  Deft's Mem. at 14, n. 12.  While proper country of origin marking pursuant to 19 U.S.C. § 1304(a) and the NAFTA Marking Rules is, of course, the responsibility of Customs, cooperative agency efforts concerning health and food safety, are not properly regulated by Customs under the Marking Statute and NAFTA Marking Rules, but rather such concerns are within the purview of the statutes and regulations for which the Food and Drug Administration and Department of Agriculture bear prime responsibility. Consequently, notwithstanding that Customs cooperates with other agencies in addressing health and food safety concerns related to agricultural products, Customs overstepped its authority by seeking to address such concerns under the Marking Statute and  NAFTA Marking Rules by excluding de minimis treatment from the tariff shift rules pursuant to section 102.13(b).

However, even assuming arguendo that Customs has the authority to address health and food safety concerns under the Marking Statute or NAFTA Marking Rules, it is extremely dubious that denial of de minimis treatment under the tariff shift rules for purposes of determining when a good is a "good of a party" pursuant to NAFTA  Annex 311 or a  "good of  the United States under the NAFTA Marking Rules," 19 C.F.R. §134.35(b), see also 19 C.F.R. §§ 102.11(3) and 102.20,  is a reasonable approach to addressing health and food safety concerns given the purpose of the Marking Statute and Marking Rules.

Chapter 4 Preference Rules, specifically Annex 405, which expressly excludes certain agricultural

products from de minimis treatment under the Chapter 4 Preference Rules of Origin. See 19 U.S.C. §

3332(e)(5)(1996). Defendant's attempt to bootstrap section 102.13(b) of the Marking Rules

implementing NAFTA Annex 311 into the Preference Rules of Origin is unavailing. As aptly pointed out

by plaintiff, the NAFTA Preference Rules of Origin and NAFTA Marking Rules speak to different

purposes: the Chapter 4 Preference Rules of Origin were adopted to determine when goods shall be

considered as "originating" products of the country of exportation eligible for preferential treatment, and

under the terms of the Agreement the Parties to NAFTA expressly elected to adopt a stringent rule of

origin for preferential treatment on a discriminatory basis. The de minimis rule for purposes of the

Preference Rules or Origin is, therefore, totally irrelevant to Customs exclusion of  de minimis treatment

under the tariff shift Marking Rules.  With respect to determining when goods are the  goods of party

for purposes of  Marking Rules, NAFTA Annex 311 authorizes the tariff shift methodology, and does

not expressly withhold  de minimis treatment under the tariff shift rules.

Significantly, too,  as pointed out by plaintiff, had the NAFTA Parties intended that the de

minimis rule of Annex 405 be also applied to Annex 311, they could have easily so provided, in which

event Customs' health and food safety rationale for excluding the de minimis exception from the tariff

shift rules would be irrelevant. On the contrary, while NAFTA Annex 311 does not specifically address

de minimis treatment under the tariff shift methodology, it does express an  intent that NAFTA parties

shall "in adopting, maintaining and applying any measure relating to country of origin marking, minimize

the difficulties, costs and inconveniences that the  measure may cause to the commerce and industry of

the other parties." See NAFTA Annex 311(4). Customs' exclusion from the  de minimis exception to

the tariff shift rules of most agricultural products pursuant to section 102.13(b), ostensibly for health and food safety reasons, was palpably  inconsistent with the express objectives of Annex 311 and the Marking Rules and an unreasonable approach for addressing Customs' health and food safety concerns.

The NAFTA Marking Rules are conceded by plaintiff to be "interpretive" in nature. Defendant urges, correctly,  that  judicial deference is owed to reasonable interpretive agency regulations. Fundamentally, an agency's <u>reasonable</u> interpretive regulations are entitled to deference by the court.  <u>Haggar Apparel Co. v. United States</u>, 526 U.S. 380 (1999), citing <u>Chevron Corporation v. Natural Resources Defense Council</u>, 467 U.S. 837 (1984).

However, judicial deference to interpretive regulations (and certain rulings) does not absolve the court from determining the reasonableness of agency interpretation. <u>See</u> this court's recent decision in  <u>Genesco Inc. v. United States</u> (CIT Slip Op. 00-57, 2000 WL 710 304, May 23, 2000). In <u>United States v. Vogel Fertilizer Co.</u>, 455 U.S. 16, 26 (1982), the Supreme Court  observed that a "[r]egulation is not a reasonable statutory interpretation unless it harmonizes with the statute's 'origin and purpose'." (Quoting <u>National Muffler Dealers Ass'n, Inc. v. U.S.</u>, 440 U.S. 472, 477 (1979).

Defendant has  failed to persuade this court that exclusion of most agricultural products from the <u>de minimis</u> exception to the tariff shift rules for health and food safety reasons is consistent with, or furthers the purpose of, either the Marking statute or the NAFTA Marking Rules, or that excluding <u>de minimis</u> treatment from the tariff shift rules reasonably addresses Customs' health and food safety

concerns related to NAFTA agricultural products.  There being no other justification by defendant for excluding most agricultural products from the de minimis exception to the tariff shift rules (other than the cryptic references to "the nature of" the goods excluded and an alleged "past practice"of not applying de minimis treatment to agricultural products), the court is constrained to agree with Bestfoods argument that section 102.13(b) is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law. Accordingly, plaintiff should be given the opportunity to demonstrate that when its finished peanut butter contains Canadian peanut slurry whether or not the finished product qualifies for de minimis treatment under 19 C.F.R. § 102.13(a) and should not be subject to marking under 19 U.S.C. § 1304(a) to show a foreign country of origin.

## **CONCLUSION**

This action was remanded to permit plaintiff to pursue any additional arguments as to why it should not be required to mark its finished peanut butter under the applicable regulations.

Contrary to defendant's contention, plaintiff's additional arguments are within the scope of the remand.

This court has concluded that Customs' health and food safety concerns in connection with most NAFTA agricultural products, while they may be relevant to and addressed by other statutes and regulations cooperatively enforced by the Customs Service and other agencies, Customs overstepped its authority in addressing health and food safety concerns by excluding de minimis treatment from the tariff shift rules with respect to most agricultural products under section 102.13(b). For all the other reasons stated above, plaintiff's argument on remand that 19C.F.R. § 102.13(b) is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law is sustained [6]

A  judgment will be entered accordingly.


New York, New York
June   , 2000                                                    James L. Watson, Senior Judge

---

[6] The court observes that the issue of  "severability," see Schnitzer Steel Products Co. v. United States, 45 Cust. Ct. 173, C.D. 2220 (1960) (where separate subdivisions of a regulation are independent and mutually exclusive, any invalidity of one portion does not destroy the validity of the other), has not been raised, and the court takes no position on the issue. However,  under the rationale of Alcan, even in the absence of a de minimis regulation, de minimis treatment under the tariff shift rules should be  implied.