BESTFOODS (formerly known as CPC International, Inc.),
Plaintiff–Appellee,

v.

UNITED STATES, Defendant–Appellant.

No. 00–1547.

United States Court of Appeals,
Federal Circuit.

July 26, 2001.

John M. Peterson, Neville, Peterson & Williams, of New York, NY, argued for plaintiff-appellee. With him on the brief, were Curtis W. Knauss; and George W. Thompson, of Washington, DC.

Armando O. Bonilla, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of .Washington, DC, argued for defendant-appellant. With him on the brief, were David M. Cohen, Director; and Jeanne E. Davidson, Deputy Director. Of counsel on the brief, was Louis W. Brenner, Jr., Attorney, Office of General Counsel, Department of the Treasury, of Washington, DC. Also of counsel on the brief, were Sandra L. Bell, Supervisory Attorney Advisor; and Monika R. Brenner, Attorney Advisor, Office of Regulations & Rulings,. U.S. Customs Service, of Washington, DC.

Before NEWMAN, Circuit Judge, ARCHER, Senior Circuit Judge, and BRYSON, Circuit Judge.

ARCHER, Senior Circuit Judge.

The United States appeals from the judgment of the Court of International Trade holding that 19 C.F.R. § 102.13(b) is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law. *Bestfoods v. United States,* 110 F.Supp.2d 965 (Ct. Int'l Trade 2000). This regulation withholds de minimis treatment under the federal marking statute from most agricultural products. Concluding that 19 C.F.R. § 102.13(b) is a valid exercise of discretion by the United States Customs Service ("Customs"), we reverse.

## BACKGROUND

Bestfoods makes Skippy peanut butter in Little Rock, Arkansas. The peanut butter is manufactured from peanut slurry, a gritty, peanut-based paste. Most of the peanut slurry in Bestfood's peanut butter is made in the United States, but 10–40% of the peanut slurry is made in Canada from peanuts grown elsewhere.

In January 1993, Bestfoods sought an administrative ruling from the United States Customs Service ("Customs") that it was not required to indicate under the federal marking statute, 19 U.S.C. § 1304(a), that its peanut butter was partially of Canadian origin. The federal marking statute requires "article[s] of foreign origin ... imported into the United States [to] be marked in a conspicuous manner ... to indicate to an ultimate purchaser the English name of the country of origin of the article." 19 U.S.C. § 1304(a) (1994). However, where foreign materials or raw ingredients are included as components in a product manufactured in the United States, the marking statute may not be triggered if the foreign ingredient is substantially transformed in the manufacture of the final product. In arguing that it was not required to mark its peanut butter as a product of Canada, Bestfoods initially contended that the Canadian peanut slurry was substantially transformed in the manufacture of the peanut butter.

Customs determined, however, that Bestfoods was required to mark its product to indicate the Canadian origin of the peanut slurry. In reaching this conclusion, Customs applied regulations promulgated pursuant to the North American Free Trade Agreement ("NAFTA"), Dec. 17, 1992, Can.-Mex.-U.S., 32 I.L.M. 289 (1993); 19 U.S.C. § 3312 (1994) (approving and implementing the NAFTA). Those regulations replaced the traditional case-by-case substantial transformation test with a "tariff shift" method. 19 C.F.R. § 134.1(b) (2000); 19 C.F.R § 102.11 (2000). Under this tariff shift method, a good, or component of a good, is considered of United States origin if the subsequent manufacturing processes in the United States are sufficient to change that good or component's tariff classification. 19 C.F.R § 102.11. Peanut slurry and peanut butter are classified under the same tariff classification, HTSUS 2008.11.10. Therefore, because the peanut slurry does not undergo a tariff shift in the processing, Customs determined that the peanut but-

ter containing this Canadian slurry must be marked to indicate the Canadian origin of the slurry.

Bestfoods appealed to the Court of International Trade, arguing that Customs had improperly replaced the traditional case-by-case substantial transformation test set forth in *United States v. Gibson–Thomsen Co.*, 27 C.C.P.A. 267, 1940 WL 4085 (1940) ("the Gibson Thomsen test"). The court agreed with Bestfoods, and remanded to Customs to determine substantial transformation under the Gibson Thomsen test. *CPC Int'l, Inc. v. United States*, 933 F.Supp. 1093 (Ct. Int'l Trade 1996). On remand, Customs again concluded that the peanut slurry did not undergo substantial transformation, and Bestfoods again appealed to the Court of International Trade. The court affirmed Customs' determination. *CPC Int'l, Inc. v. United States*, 971 F.Supp. 574 (Ct. Int'l Trade 1997). Bestfoods then appealed to this court.

In that first appeal, we reversed-in-part and vacated-in-part, concluding that Customs had properly applied its regulations promulgated pursuant to NAFTA in its initial determination. *Bestfoods v. United States*, 165 F.3d 1371 (Fed.Cir.1999). We also remanded the case so that Bestfoods could pursue any alternative arguments concerning Customs' application of the new regulations.

On remand, Bestfoods raised the new argument that 19 C.F.R. § 102.13(b) (2000) is arbitrary and capricious. This provision is a subsection of 19 C.F.R. § 102.13, and

sets forth a de minimis rule that excepts from the marking requirement incorporated foreign material making up less than 7 percent of the overall value of the good (or 10 percent of the value for a good of Chapter 22, Harmonized System).[1] This de minimis exception is not applicable, however, to most agricultural products, as set forth in 19 C.F.R. § 102.13(b). Bestfoods argued on remand that the exclusion of agricultural products, such as its peanut butter, from the de minimis exception was arbitrary and capricious and, therefore, invalid. The Court of International Trade agreed with Bestfoods and entered judgment invalidating 19 C.F.R. § 102.13(b), effectively extending the de minimis rule of 19 C.F.R. § 102.13 to agricultural products such as Bestfoods' peanut butter. *Bestfoods v. United States*, 110 F.Supp.2d 965 (Ct. Int'l Trade 2000).

The United States now appeals that judgment, arguing that 19 C.F.R. § 102.13(b) is a valid exercise of Customs' discretion and was improperly invalidated.

## DISCUSSION

■ We review the Court of International Trade's consideration of Customs' regulations, a pure question of law, de novo. *See Texport Oil Co. v. United States*, 185 F.3d 1291, 1294 (Fed.Cir.1999). The federal marking statute expressly delegates to the Secretary of the Treasury the authority to promulgate regulations implementing the marking statute, in general, and as it specifically applies to goods

---

1. In pertinent part, this regulation reads as follows:

§ 102.13 De Minimis

I. I.(a) Except as otherwise provided in paragraphs (b) and (c) of this section, foreign materials that do not undergo the applicable change in tariff classification set out in § 102.20 or satisfy the other applicable requirements of that section when incorporated into a good shall be disregarded in determin-

ing the country of origin of that good if the value of those materials is no more than 7% of the value of the good or 10% of the value of a good of Chapter 22, Harmonized System.

(b) Paragraph (a) of this section does not apply to a foreign material incorporated in a good provided for in Chapter 1, 2, 3, 4, 7, 8, 11, 12, 15, 17, or 20 of the Harmonized System.

19 C.F.R. § 102.13.

imported from a NAFTA country.[2] 19 U.S.C. §§ 1304(a) and 1304(j) (1994); 19 U.S.C. § 3314(b) (1994). In reviewing the regulations promulgated pursuant to this grant of authority, we must defer to the administrative agency and, under the APA standard of judicial review, we must uphold these regulations unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (1994); *United States v. Mead Corp.*, 533 U.S. ——, ——, —— S.Ct. ——, —— L.Ed.2d —— (2001); *Chevron U.S.A. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The United States argues that 19 C.F.R. § 102.13(b) is a valid exercise of Customs' discretion in promulgating regulations to implement the federal marking statute and the NAFTA marking rules. It notes that the federal marking statute does not require any de minimis exceptions. Moreover, the limited de minimis exception in the regulations corresponds with Customs' past practice and harmonizes the marking regulations with similar country of origin rules associated with the NAFTA Tariff Preference Rules. Accordingly, the United States asserts that the Court of International Trade improperly invalidated 19 C.F.R. § 102.13(b). We agree.

The regulation at issue, 19 C.F.R. § 102.13(b), is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Neither the federal marking statute, 19 U.S.C. § 1304(a), nor the NAFTA marking rules, set out in Annex 311 of the NAFTA, requires a de minimis exception for agricultural products. Indeed, the federal marking statute does not provide specifically for any such de minimis exceptions. In general, it requires that "*every* article of foreign origin ... be marked." 19 U.S.C. § 1304(a) (emphasis added). The marking statute then sets out certain circumstances where a foreign product need not be marked. For example, no marking is required when the article cannot be marked (§ 1304(a)(3)(A)) or the article was produced more than 20 years before its import (§ 1304(a)(3)(I)) or where marking of the article in question would be economically prohibitive (§ 1304(a)(3)(K)). In view of the broad statutory language requiring marking of all articles, except for the listed exceptions, we cannot conclude that Customs was required to allow further exceptions from the marking requirement.

As the United States points out, Customs' treatment of agricultural products under the NAFTA marking rules codifies its past practice of strictly enforcing the marking statute with respect to such articles. For example, in 1985, Customs determined that orange juice manufacturers were required to mark their products to identify every source of foreign concentrate included in their juice. C.S.D. 85–47, 19 Cust. B. & Dec. No. 593 (1985); *Nat'l Juice Prods. Ass'n v. United States*, 628 F.Supp. 978 (Ct. Int'l Trade 1986) (affirming Customs' decision on appeal).[3]

---

**2.** The United States Customs Service is within the Department of the Treasury and promulgated the regulations in question. It also has responsibility for enforcing the federal marking statute.

**3.** Customs subsequently relaxed this requirement, following a showing by the juice manufacturers that the marking was economically prohibitive. Treas. Dec. 89–66 (1989), reprinted in 54 Fed.Reg. 29,540 (July 13, 1989). Bestfoods argues that this subsequent decision indicates that Customs' past practice was not to enforce strictly the marking requirement. We disagree. Customs' decision to relax the marking requirement for juice manufacturers was based on a specific showing of economic harm, which is an enumerated exception to the general rule set out in the statute. *See* 19 U.S.C. § 1304(a)(3)(K) (1994).

■ In addition, withholding the de minimis exception from agricultural products tends to harmonize the country of origin rules for marking purposes with the country of origin rules for preferential tariff treatment under the NAFTA. The country of origin rules for preferential tariff treatment, while providing a de minimis exception for components comprising less than 7% of the value of the overall good, withhold this treatment from agricultural products.[4] Customs' action in establishing a de minimis rule, for purposes of the NAFTA marking rules, that closely tracks the de minimis rule for preferential tariff treatment under the NAFTA is not arbitrary.

We also reject Bestfoods' contention that the regulations, which do not apply the principle of *de minimis non curat lex* to the marking of agricultural products, are inconsistent with our decision in *Alcan Aluminum, Inc. v. United States*, 165 F.3d 898 (Fed.Cir.1999). The present case is readily distinguishable from *Alcan*. In *Alcan*, the Court of International Trade considered whether aluminum ingots, comprised of both Canadian and non-Canadian materials, could be considered a product of Canada for purposes of the preferential trade status under the United States–Canada Free–Trade Agreement Implementation Act of 1988. Because a small amount of the foreign material (less than one percent by weight) did not undergo a tariff shift during the Canadian processing, the court determined that the aluminum ingots could not be considered a product of Canada. On appeal, we reversed, concluding that the tariff classification at issue had to be construed in light of the general principle of *de minimis non curat lex*, and that over 99% transformation was sufficient to meet the requirements of the properly-construed tariff classification.

In the present case, however, we are not confronted with foreign components on the order of one percent. *Cf. Alcan*, 165 F.3d at 902–03 (Applying the rule of *de minimis non curat lex* as explained in *Wisconsin Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 112 S.Ct. 2447, 120 L.Ed.2d 174 (1992)). Rather, Bestfoods seeks to take advantage of the relatively generous de minimis standard articulated in the marking regulations—7% of the value of the final product. Therefore, the question presented by this case is whether the regulations arbitrarily withhold the 7% exception from agricultural products. For the reasons stated above, we conclude that they do not.

■ We also reject Bestfoods' arguments that the regulations at issue are based on inappropriate health and safety concerns and lead to absurd results. Pointing to published comments concerning the regulation at issue, Bestfoods contends that Customs improperly withheld the de minimis exception from agricultural products out of a misplaced concern for consumer safety. *See* 61 Fed.Reg. 28,932 (June 6, 1996). Bestfoods argues that it is not the role of Customs to address food safety issues and, therefore, this was an inappropriate justification for Customs' regulation. We do not agree. Customs has the discretion to promulgate regulations to implement the federal marking statute, 19 U.S.C. § 1304(a), as further directed by the NAFTA marking rules, for products from NAFTA countries. As noted above, the purpose of marking products under the marking statute is to inform consumers of the origin of foreign goods. It was surely within Customs' discretion to determine that consumers might be more concerned about foreign materials in agricultural products, including foods. Thus, Customs' reference to "health and food

---

**4.** These rules withhold de minimis treatment      from various other products as well.

safety concerns" does not necessarily indicate that Customs has improperly taken on a role assigned to other federal agencies that are directly responsible for ensuring food safety. Rather, Customs was merely exercising its discretion to craft rules that would best inform consumers.

■ We similarly reject Bestfoods' arguments that the regulation leads to absurd results. Bestfoods points out that under the marking regulations consumers are not informed about any quantity of foreign ingredients, if such ingredients are substantially transformed (so as to undergo a shift in tariff classification) during manufacturing of the final product. Further, Bestfoods argues that potentially toxic foreign non-agricultural additives are subject to the de minimis exceptions, and the foreign origins of such additives need not be indicated if less than 7%. Again, we do not find Bestfoods' contentions persuasive. Although the marking regulations will not always indicate to consumers the foreign origin of certain components, we cannot conclude that it was arbitrary or capricious for Customs to consider substantially-transformed ingredients to be products of the country of manufacture, even if the raw materials come from some foreign location. Indeed, this was exactly the conclusion that the NAFTA Marking Rules required. *See* NAFTA Annex 311, 32 I.L.M. 289 (1993). As for Bestfoods' contention concerning non-agricultural additives, it is simply incorrect. The de minimis exception is withheld for foreign material incorporated into any agricultural product identified in § 102.13(b), no matter whether the incorporated foreign material is an agricultural product or non-agricultural food additive. *See* 19 C.F.R. § 102.13(b).

Finally, in its briefing and at oral argument, Bestfoods contended that Customs' marking regulations lead to absurd results in that products that are otherwise of domestic origin must be labeled as foreign products even if only minute quantities of foreign materials are added. We have carefully considered Bestfoods' arguments and we have carefully reviewed the additional briefing by both parties on this issue. We conclude that the regulations, when properly interpreted, do not lead to any absurd results.

## CONCLUSION

For the reasons stated above, 19 C.F.R. § 102.13(b) is not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Accordingly, the judgment of the Court of International Trade invalidating this regulation is reversed.

*REVERSED.*

### COSTS

Each party shall bear its own costs.